**696**

UNITED STATES of America

v.

**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al.**

Crim. A. No. 66–295.

United States District Court
W. D. Pennsylvania.

Aug. 19, 1968.

See also, D.C., 272 F.Supp. 691, D.C., 274 F.Supp. 790, D.C., 278 F.Supp. 608, D.C., 278 F.Supp. 241, D.C., 288 F.Supp. 701.

John C. Fricano, U. S. Dept. of Justice, Washington, D. C., Thomas A. Daley, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

David J. Armstrong, Pittsburgh, Pa., for defendant Rheem Manufacturing Co.

James A. Bell, Pittsburgh, Pa., for defendant Universal-Rundle Corp.

Malcolm Anderson, Pittsburgh, Pa., for defendant Wallace-Murray Corp.

## OPINION

ROSENBERG, District Judge.

Three corporate defendants, Rheem Manufacturing Company, Universal-Run-

dle Corporation and Wallace-Murray Corporation, of the seventeen corporate and individual defendants charged by indictment in the above entitled case with violation of § 1 of the Sherman Act (15 U.S.C. § 1),[1] have presented motions for leave to withdraw pleas of not guilty, entered at the arraignment, and to enter pleas of nolo contendere.

All three movants have given as their reason for the motions that "it would be in the best interests of the corporation to move for leave to withdraw its plea of not guilty and substitute in lieu thereof a plea of nolo contendere." Only Rheem Manufacturing Company filed a supporting affidavit in which it deposed, inter alia, that it had acquired a certain corporation in 1956 and that this corporation was primarily engaged in the manufacture and sale of both cast iron enameled and vitreous china plumbing fixtures; that its plumbing fixture business incurred substantial deficits in most of the years; that its total plumbing fixture business represented sales of about 4.5% to 5% of that market; that Rheem determined to discontinue its plumbing fixture business; and that it had never been convicted of any antitrust violations.

The Government has strenuously opposed the granting of these motions. It contends that all of the defendants charged in the indictment were gross violators of this Act and that the movants here seek to avoid consequences or penalties, beyond that provided for the criminal violations, as to the liability of the defendants to civil plaintiffs in other collateral actions. The Government also charged that allowance of the nolo pleas to these movants would seriously hamper or obstruct the prosecution of the criminal case against the remaining defendants. The Government has not filed a counter-affidavit in the case against Rheem Manufacturing Company. Neither has it presented any affidavits in opposition to the motions.

Section 5(a) of the Clayton Act (15 U.S.C. § 16(a)) provides as follows:

"A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided*, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title."

Federal Rule of Criminal Procedure 11 provides as follows:

"A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea. As amended Feb. 28, 1966, eff. July 1, 1966."

1. Section 1 makes illegal contracts, trust and conspiracy in restraint of trade or commerce, with certain exceptions, and provides that every person who violates prohibitions as contained in § 1 through § 7 of the title shall be deemed guilty of a misdemeanor and upon conviction be punished by a fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

Each movant has attached to the motions a Certificate of a corporate Resolution authorizing counsel to file the specific motions, with the further authorization to report to the court that the actions were taken voluntarily and that the defendants had been apprised of the consequences of the plea of nolo contendere.[2]

The Government's first objection is that the maximum sentence of $50,000 provided for by Congress would be an inadequate penalty against each of these particular defendants because of the flagrance of the antitrust violations. The Government argues that it was the intention of Congress that criminal actions be used to implement and aid aggrieved civil plaintiffs in collateral actions. Reference is made to the Congressional Report, 63rd Congress, 2nd Session 14, H.R. Rep. No. 627. At page 9490, Representative Carlin said:

"We propose, in the first place, in one of the sections of this bill, to give every private suitor who has a cause of action against a combination acting in violation of law triple damages under this bill, as he is given triple damages under section 7 of the Sherman Act against the offending corporation. But the remedy given in section 7 of the Sherman Act has been of little value and practically useless in the past, because the individual, the small man, and the small concern, were utterly helpless in their efforts to confront in the courts these great and powerful corporations, and the result was that the remedy provided in the Sherman Act has been of little efficiency, and the remedy provided in this bill for similar offenses, for violation of its provisions, may be of little efficiency unless we supplement it and lend to private litigants the aid of this great Government, that has the means, the opportunity, and the force, and the machinery to cope with the greatest and most powerful corporations and combinations in the country."

It would seem then that § 5(a) was intended to aid those who particularly needed support against strong corporate combinations violating the antitrust laws. A series of civil actions have originated in Philadelphia against corporate defendants for damages based on the violations for which these defendants were here indicted. The plaintiffs and intervenors include states, public authorities, contractors and others not easily classified as "small men". Findings of Fact, United States v. American Radiator & Standard Sanitary Corporation et al., 272 F.Supp. 691 at page 694 (W.D.Pa.1967), reversed on matters of law (388 F.2d 201, C.A. 3, 1967).[3]

Practically all the plaintiffs in all jurisdictions where actions have been brought against the defendants are not classified within the category of "small men" as they are combined in these various civil actions. However, the purpose of the Act was not only to help small men. The purpose in enacting § 5(a) was also to minimize the burdens of litigation for injured private suitors by making available to them all matters previously established by the Government in the pertinent antitrust actions. Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 71 S.Ct. 408, 95 L.

---

2. The Resolutions differ from the averments as contained in each of the three motions where the assertions are that the Board of Directors were advised that "if the pleas were accepted the Court could and probably would enter a judgment of conviction against [defendant] upon its plea of nolo contendere. The Directors were also advised that upon a judgment of conviction the Court could fine the corporation any sum up to and including $50,000." All are uniformly worded.

There are no assertions either in the motions or the Certificates that the defendants knew that the entry of a plea of nolo contendere would be, for the purpose of this case, a plea of guilty.

3. Counsel have led me to believe that there were over 600 actions started in various cities across the United States, which cases have been referred to a panel on multidistrict litigation, Public Law 90–296, April 29, 1968, 82 Stat. 109.

Ed. 534, 1951. It has also been held that the purposes of the antitrust laws are best served by insuring that private actions will be an ever present threat to deter those who contemplate business behavior in violation of the antitrust laws. Thus, private actions have usefulness and serve as a bulwark for antitrust enforcement. Perma Life Mufflers, Inc. et al. v. International Parts Corp. et al., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982, 1968; Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1962); Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951).

Section 5(a), it has been held, was also intended to serve the purpose and function of encouraging capitulation by corporate defendants, thereby saving the Government great expense. General Electric Co. v. City of San Antonio, 334 F.2d 480, 486, C.A. 5, 1964. The exclusionary proviso in this section making final judgments or decrees rendered in civil or criminal antitrust actions by the United States admissible as prima facie evidence against such defendants in private civil actions was to encourage consent judgments and decrees and so save the Government time and expense or protracted trials. State of Michigan v. Morton Salt Co., 259 F.Supp. 35 (D.C. Minn.1966), affirmed Hardy Salt Co. v. State of Ill., 377 F.2d 768, C.A. 8, 1967. The overall purpose of Section 5(a) is to aid enforcement objectives of the antitrust laws. State of Michigan v. Morton Sale Co., supra; General Electric Co. v. City of San Antonio, supra; Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 323 F.2d 412, C.A. 7, 1963, cert. den. 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659, 1964; Deluxe Theatre Corp. v. Balaban & Katz Corp. et al., 95 F.Supp. 983 (N.D.Ill.1951); Homewood Theatre Inc. v. Loew's, Inc., 110 F.Supp. 398 (D.C.Minn.1952).

The Government's arguments are that a plea of guilty or a conviction would not only aid the civil plaintiffs and provide deterrents, but would also provide more justifiable punishment of the defendants, while the pleas of nolo contendere falling within the exclusionary proviso of § 5(a) (Armco Steel Corporation v. State of North Dakota, 376 F.2d 206, C.A. 8, 1967; Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., supra; General Electric Co. v. City of San Antonio, supra) would provide no aid for the purpose of the antitrust Act and for the benefit of the civil plaintiffs.

In the present civil actions a vast amount of discovery machinery has been put in motion at Philadelphia against corporate defendants in this case, which will probably provide more effective and possibly speedier remedies than could result here because of the expectancy that there will be no final judgment of conviction until completion of all the anticipated appellate processes.

The Government contends that the defendants should be compelled to stand trial or to enter out-and-out pleas of guilty for the reason also that the antitrust violations by the defendants ought to be open to public view for the public's own protection. But this seems to me to be an empty argument because a plea of guilty or a conviction would serve no greater purpose than the plea of nolo contendere. The Government could, in a plea of nolo contendere, come forward and present evidence in open court to establish the factors required in imposing a sentence, including the degree of culpability.

Additionally, as of the date of the indictment here presented by the grand jury, the Government filed a civil action for an injunctive remedy against the defendants. The civil action eventually must be determined upon the evidence presented in open court, if not by stipulation, and so provide the adequate vehicle for informing the public regarding antitrust violations as the Government believes.

 Federal Rule of Criminal Procedure 11 vests the right in the court to accept or reject a plea of nolo contendere. Mason v. United States, 250 F.2d 704, C.A. 10, 1957. Rule 11 directs that no plea either of guilty or of nolo con-

tendere be accepted by the court without first addressing the defendant personally and determining that the plea is made voluntarily with the understanding of the nature of the charge and the consequences of the plea. To this extent both pleas are alike. Neither plea may be withdrawn after it is once accepted by the court, without the consent of the court. Nagelberg v. United States, 377 U.S. 266, 84 S.Ct. 1252, 12 L.Ed.2d 290; Lott v. United States, 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940, 1961; United States v. Shneer, 194 F.2d 598, C.A. 3, 1952. However, there is a difference between the pleas. A plea of guilty once accepted is tantamount to a conviction. United States v. Ptomey & Young, 366 F.2d 759, C.A. 3, 1966; Hudgins v. United States, 340 F.2d 391, C.A. 3, 1965. But a plea of nolo contendere even though accepted is only an admission of guilt on the facts of the case as set forth in the indictment for the purpose of the case. Lott v. United States, supra; Bell v. Commissioner of Internal Revenue, 320 F.2d 953, C.A. 8, 1963; Tseung Chu v. Cornell, 247 F.2d 929, C.A. 9, 1957, cert. den. 78 S.Ct. 265, 355 U.S. 892, 2 L.Ed.2d 190; Mickler v. Fahs, 243 F.2d 515, C.A. 5, 1957.

■ While in Hudson v. United States, 272 U.S. 451, 47 S.Ct. 127, 71 L. Ed. 347, 1926, the Supreme Court has held that a plea of nolo contendere is a declaration by the accused that he will not contest the charge against him, and that he pleads guilty for the purpose of the case, it is, nevertheless, not a final decree and is subject to an attack even after sentence as in the case of a conviction. United States v. Frankfort Distilleries, 324 U.S. 293, 65 S.Ct. 661, 89 L. Ed. 951, 1945; Lott v. United States, supra. In Lott, 367 U.S. at page 426, 81 S.Ct. at page 1567, it was said:

"Although it is said that a plea of nolo contendere means literally 'I do not contest it,' Piassick v. United States, 5 Cir., 253 F.2d 658, 661, and 'is a mere statement of unwillingness to contest and no more,' Mickler v. Fahs, 5 Cir., 243 F.2d 515, 517, it does admit 'every essential element of the offense [that is] well pleaded in the charge.' United States v. Lair, 195 F. 47, 52 (C.A. 8th Cir.). Cf. United States v. Frankfort Distilleries, 324 U.S. 293, 296, 65 S.Ct. 661, 89 L.Ed. 951. Hence, it is tantamount to 'an admission of guilt for the purposes of the case,' Hudson v. United States, 272 U.S. 451, 455, 47 S.Ct. 127, 71 L. Ed. 347, and 'nothing is left but to render judgment, for the obvious reason that in the face of the plea no issue of fact exists, and none can be made while the plea remains of record,' United States v. Norris, 281 U.S. 619, 623, 50 S.Ct. 424, 425, 74 L. Ed. 1076. Yet the plea itself does not constitute a conviction nor hence a 'determination of guilt.' It is only a confession of the well-pleaded facts in the charge. It does not dispose of the case. It is still up to the court 'to render judgment' thereon. United States v. Norris, supra, 281 U.S. at page 623, 50 S.Ct. [424] at page 425."

■ Ordinarily a plea of nolo contendere leaves open for review only the sufficiency of the indictment, Tseung Chu v. Cornell, supra. However, other unusual circumstances may require the allowing of nolo contendere defendants an opportunity to make defense to the indictment. United Brotherhood of Carpenters et al. v. United States, 330 U.S. 395, 412, 67 S.Ct. 775, 91 L.Ed. 973, 1947.

■ From all that has been presented here, it is obvious that certain factors peculiar to this case must first be considered before there can be an acceptance or rejection of the defendants' motions in this antitrust action. United States v. Standard Ultramarine & Color Co., 137 F.Supp. 167 (S.D.N.Y.1955). Judge Weinfeld, at page 172, said:

"Some, but by no means all, the factors to be considered, or at least those which this Court deems relevant, are: the nature of the claimed violations; how long persisted in; the size and power of the defendants in the particular industry; [and] the impact of

the condemned conduct upon the economy \* \* \*"

I would add another one here and that is whether or not injured private plaintiffs who are attempting to right wrongs done them in separate civil cases, are meeting with success, and if not, the reasons therefor. Thus, the problem is to determine how justice may be affected by the acceptance or rejection of the pleas.

The Government has complained, additionally, without support, that the prosecution of the remaining defendants here will be hampered by the acceptance of these pleas. Since this may be so, I deem it proper to be legally informed in this regard in order that I may give such evidence proper consideration, in the allowance or disallowance of the motions.

At all events, the parties here have not presented me with sufficient information by which I may intelligently be guided into a determination on the questions here raised by the movants. Under all the circumstances I deem it incumbent upon me to deny the motions so presented without prejudice.

See also 3 Cir., 388 F.2d 201; D.C., 271 F.Supp. 608; D.C., 288 F.Supp. 696.